NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JEAN JAMISON,                              )
                                           )
            Appellant,                     )
                                           )
v.                                         )     Case No. 2D13-5846
                                           )
STATE OF FLORIDA,                          )
                                           )
            Appellee.                      )
_____)

Opinion filed February 17, 2016.

Appeal from the Circuit Court for
Hillsborough County; Kimberly K.
Fernandez, Judge.

Howard L. Dimmig, II, Public Defender, and
Julius J. Aulisio, Assistant Public Defender,
Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Wendy Buffington,
Assistant Attorney General, Tampa, for
Appellee.


ALTENBERND, Judge.

        Jean Jamison appeals his judgment and sentence for attempted second-

degree murder.  We remand this case for the trial court to determine whether it needed

to appoint conflict-free counsel to represent Mr. Jamison on his motion to withdraw plea,

which he filed pro se within thirty days of his rendered sentence.  See Fla. R. Crim. P.

3.170(*l*). The trial court will also need to address Mr. Jamison's competency on remand, and at a minimum, it must enter a written order of competency. We expressly do not reverse Mr. Jamison's judgment and sentence at this time because, with the assistance of counsel, Mr. Jamison may ultimately decide to withdraw his motion to withdraw plea.

On October 9, 2009, Mr. Jamison and Arnold Waldale Fields engaged in a fight with two other men. Mr. Jamison allegedly stabbed the first man multiple times. That man survived. Mr. Fields killed the second man when the second man came to the aid of the first man. Mr. Jamison and Mr. Fields were charged in a single information, but Mr. Jamison was charged only for the attempted second-degree murder of the first man, which is a first-degree felony punishable by life imprisonment. See § 782.04(2), Fla. Stat. (2009). The State filed a notice of its intent to sentence Mr. Jamison for that offense as both a prison releasee reoffender and a habitual felony offender. The charges against Mr. Fields were resolved separately, and he is serving a life sentence for murder.

The trial court declared Mr. Jamison incompetent to proceed in September 2012 and committed him to the Department of Children and Families. In May 2013, following a competency hearing, the trial court entered an order finding Mr. Jamison competent to proceed. But, about a month later and just before trial, Mr. Jamison's counsel filed another motion to determine Mr. Jamison's competency to stand trial. The trial court ordered additional evaluations, which resulted in two experts filing reports opining that Mr. Jamison was competent and one expert filing a conflicting report.

Mr. Jamison's case was set for trial on June 10, 2013. The motion to determine competency was scheduled for hearing on June 11, 2013.[1] On the morning of June 10, prior to jury selection, counsel for Mr. Jamison reported to the trial court that Mr. Jamison was acting strangely in his holding cell. The trial court brought Mr. Jamison into the courtroom and carefully explained that the two experts believed that he was malingering and that the court would allow Mr. Jamison to fully participate at trial without shackles or handcuffs so long as he was not disruptive. Mr. Jamison had not asked to be excused from the courtroom, but his counsel was worried about his own personal safety and was also worried that Mr. Jamison would suffer prejudice in the eyes of the jurors if he were to act strangely in front of them.

With Mr. Jamison present, the State announced that it had filed a superseding information adding an additional count of aggravated battery with a weapon causing great bodily harm, a second-degree felony. See § 784.045(1)(a), Fla. Stat. (2009).[2] The State explained that it also intended to notice Mr. Jamison for sentencing both as a prison releasee reoffender and a habitual felony offender on this new charge after the court made a finding of Mr. Jamison's competence. Thus, as the trial commenced, Mr. Jamison was facing the possibility of sentences between thirty years' imprisonment and life imprisonment.

---

[1]According to the trial transcript, two of the experts were not available to testify until June 11, 2013. However, because jury selection was held on Mondays only, the trial was still scheduled to begin on June 10, 2013, which was a Monday.

[2]The same man is the alleged victim of the aggravated battery and the attempted second-degree murder. Whether this raises double jeopardy concerns is not a matter we need to address at this juncture.

At that point, the State gave Mr. Jamison an opportunity to plead to the attempted second-degree murder charge in exchange for twenty-five years' imprisonment, concurrent with a fifteen-year sentence that Mr. Jamison was already serving for charges in an unrelated case. The term of imprisonment was to be followed by a term of probation. The plea did not involve habitual offender or prison releasee reoffender status. The record reflects that this was not a new offer but a final chance at an offer that the State had made earlier. Mr. Jamison elected to accept the offer.

The trial court prudently did not accept the plea at that time. The court was aware that there was an outstanding issue of Mr. Jamison's competency and that a hearing on the issue was scheduled for the following day. The experts were scheduled to testify regarding the contents of their reports at that hearing. Accordingly, the court instructed Mr. Jamison's attorney to speak with Mr. Jamison to determine whether "he w[ould] stipulate to the reports." The trial court explained that afterwards it wanted to bring Mr. Jamison into court to "make that finding." At this point, a recess was taken so Mr. Jamison's attorney could discuss the matter with Mr. Jamison.

When court resumed later in the morning, the trial court immediately confirmed that Mr. Jamison was communicating coherently, albeit slowly, with his counsel. Mr. Jamison still wanted a competency hearing. The court explained that counsel could try to arrange for the experts to testify that day, before jury selection. However, the court explained that if the experts were not available to testify that day, they would still need to proceed with jury selection, and that if that happened, any plea would be open to the court.

The court took another recess, and Mr. Jamison's counsel again consulted with him. Afterwards, counsel advised the court that Mr. Jamison had decided that he "wanted to stipulate to the reports." The trial court placed Mr. Jamison under oath and carefully made him answer questions to demonstrate his level of understanding and to confirm that after consulting with his attorney, he wanted his attorney "to stipulate to the contents of those reports <u>and that [Mr. Jamison was], in fact, competent in th[e] proceeding</u>." (Emphasis added.) The trial court questioned Mr. Jamison to confirm that he independently remembered the interviews with the doctors and when they had occurred. The court also questioned Mr. Jamison's counsel, who confirmed that he believed that Mr. Jamison had understood their communications.

The court then stated:

> Okay. You need to prepare an order for me, [defense counsel]. [Mr. Jamison has] answered all my questions coherently and he's answered all my questions appropriately, and I have no reason to believe he is incompetent.
>
> So the Defense, having stipulated to the reports, I am going to make a finding that the Court is going to adopt the opinions of Dr. Cipriano as well as Dr. Bursten, that, in fact, [Mr. Jamison] is competent to stand trial and that all information indicates that the alleged trial incompetence represents his intent to consciously avoid criminal responsibility and that he is malingering and feigning. So the Court is going to find him competent and you just need to prepare an order to that respect.

According to our record, no order was actually prepared or recorded. Thereafter, Mr. Jamison was sentenced in accordance with his plea.[3]

---

[3]When the State orally communicated the plea offer to Mr. Jamison before jury selection, it recited a term of ten years of probation. However, the written plea agreement and sentence reflect a term of five years of probation.

Within thirty days, Mr. Jamison filed a motion to withdraw his plea. Like many pro se pleadings, it is not a model pleading. Nevertheless, he alleges in his motion that he entered his plea involuntarily because his counsel "affirmatively misadvise[d]" him about "the maximum length of the sentence he would have to complete." It is useful at this point to recall that the sentence in this case is concurrent with a sentence that Mr. Jamison was already serving. The maximum length of a sentence can be difficult to explain in such cases. The trial court denied the motion as facially insufficient without holding a hearing to determine whether it needed to appoint conflict-free counsel to represent Mr. Jamison on his motion or to resolve the merits of the motion.

Although our record does not contain the evidence that the State was prepared to present against Mr. Jamison at this trial, it does suggest that Mr. Jamison's negotiated plea was a very favorable contract. He is serving a twenty-five-year prison sentence that is concurrent with the sentences that commenced in 2011 for his earlier offenses. His sentence is gain-time eligible. If he withdraws his plea and a jury convicts him of either attempted second-degree murder or aggravated battery, he could serve a much longer, consecutive sentence under the restrictions applicable to a habitual felony offender or a prison releasee reoffender. Thus, Mr. Jamison should think long and hard about the wisdom of proceeding with his motion to withdraw his plea.

Nonetheless, we are compelled to remand this matter for further proceedings. "Ordinarily, a pro se motion filed by a represented party is a nullity." Burns v. State, 50 So. 3d 744, 746 (Fla. 2d DCA 2010) (citing Smith v. State, 21 So. 3d 72, 74 (Fla. 1st DCA 2009)). However, when a defendant moves to withdraw a plea

"based on allegations such as that counsel misadvised him, made affirmative misrepresentations, or coerced him into accepting a plea, the defendant has made claims that give rise to an adversarial relationship." Sheppard v. State, 17 So. 3d 275, 286 (Fla. 2009). In such a case, unless the defendant's allegations are conclusively refuted by the record, the trial court is obligated to hold a limited hearing to determine whether an adversarial relationship between the defendant and his counsel in fact exists. Id. at 287 & n.9. The defendant, his counsel, and the State must all be present at the hearing. Id. at 287. If the trial court determines from the hearing that an adversarial relationship exists, it must either discharge counsel or permit counsel to withdraw and appoint conflict-free counsel to represent the defendant on his or her motion to withdraw. Id.

Here, Mr. Jamison alleged that his plea was involuntary because his trial counsel "affirmatively misadvise[d]" him about "the maximum sentence he would have to complete in the Department of Corrections." "Unlike a general allegation of a conflict of interest with [his] lawyer," this allegation that counsel misadvised Mr. Jamison about the terms of his plea is sufficient to create an adversarial relationship. See Sheppard, 17 So. 3d at 286. We thus conclude that Mr. Jamison's motion, which provided a specific factual allegation to support his claim of misadvice, was sufficient to require a Sheppard hearing. Cf. Burns, 50 So. 3d at 747 (concluding that the defendant's allegations that "his original counsel misadvised him and rendered the plea unknowing and involuntary" were sufficient to invoke the Sheppard procedure). If the trial court determines on remand that the allegation is true, it may be a basis to allow Mr. Jamison to withdraw his plea. See Sheppard, 17 So. 3d at 283 ("[M]isrepresentations or

mistaken advice by counsel concerning the length of the sentence may be a basis to allow a defendant to withdraw a plea.").

Moreover, Mr. Jamison's allegation that his counsel misadvised him about the maximum sentence he would serve under the plea is not refuted by the record. We have the transcript of the plea colloquy. However, we know from what transpired on the record before Mr. Jamison entered the plea that counsel and Mr. Jamison had multiple off-the-record discussions about the plea and the issue of Mr. Jamison's competency. Thus, the trial court should have held a Sheppard hearing to determine whether it needed to appoint conflict-free counsel to represent Mr. Jamison on his motion to withdraw. See id. at 287; Burns, 50 So. 3d at 746.

On remand, the trial court must follow the Sheppard procedure. It must also revisit the issue of competency. At a minimum, the trial court needs to enter a written order resolving the motion to determine competency. See Dougherty v. State, 149 So. 3d 672, 678 (Fla. 2014) ("[I]f a trial court finds that a defendant is competent to proceed, it must enter a written order so finding."). As cautious as the trial court was in this case, the case law does not permit a trial court to accept a stipulation of competency from a defendant to proceed to trial or to accept a plea. See id.; Shakes v. State, No. 2D14-4319 (Fla. 2d DCA Feb. 10, 2016). Although it is likely that the trial court intended to make an independent finding of competency based on Mr. Jamison's agreement that the court could make that decision based on the reports without the testimony of the experts, the transcript is not clear on this ruling. This court recently discussed similar competency issues in Shakes. The trial court simply needs to assure

that its record is adequate on this issue under the requirements explained in <u>Dougherty</u> and <u>Shakes</u> before it resolves the pending motion to withdraw plea.

Remanded with instructions.


NORTHCUTT and SLEET, JJ., Concur.